**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ALBERT WILLIAM LACY,

        Plaintiff,

v.                            CIVIL ACTION NO.   2:13-cv-14813

JOE DELONG, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's 42 U.S.C. § 1983 civil rights complaint.   (ECF No. 2.)  On June 19, 2013, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and a recommendation for disposition ("PF&R"). (ECF No. 3.)   Magistrate Judge Tinsley filed his PF&R, (ECF No. 5), on May 20, 2014, recommending that this Court dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B).   Plaintiff filed timely objections to the PF&R (the "Objections") on May 28, 2014.   (ECF No. 6.)

For the reasons discussed herein, the Court **SUSTAINS IN PART** the Objections, (*id.*), **ADOPTS** the PF&R, (ECF No. 5), only to the extent it is consistent with this Memorandum Opinion and Order, and **RE-REFERS** this case to Magistrate Judge Tinsley for further proceedings consistent with this Memorandum Opinion and Order.

1

## I.      Background

Plaintiff filed the instant § 1983 complaint (the "Complaint") on June 19, 2013, alleging that various known and unknown officials at South Central Regional Jail ("SCRJ") and Prime Care Medical, Inc. ("Prime Care"), the independent medical provider at SCRJ, were deliberately indifferent both to Plaintiff's safety and his serious medical needs.   Plaintiff alleges that he was a pre-trial detainee at SCRJ from October 21, 2012 until March 8, 2013.  (ECF No. 2 at 11.)   It does not appear that Plaintiff was subsequently incarcerated, however, and at the time he filed his complaint, he listed a residential address in Charleston, West Virginia as his place of residence.[1] (*Id*. at 3; *see also* ECF No. 5 (the PF&R) at 3 (noting that Plaintiff "is not presently incarcerated").).

Plaintiff's primary allegation is that an SCRJ Correctional Officer, Officer Hunter, "instigated an assault on the plaintiff by telling two white inmate[s] in the POD that Plaintiff Lacy was a Child molester."   (ECF No. 2 at 9.)   At Officer Hunter's provocation, Plaintiff "was force[d] to fight one (1) white inmate for twenty-five minutes . . . and then . . . was forced to fight another white inmate for about seven (7) minutes before correctional officers came in and

---

[1]  The Complaint admits that Plaintiff did not present the claims in his Complaint to SCRJ pursuant to the institution's prisoner grievance procedure.   Generally, this failure to utilize available prison grievance procedures would run afoul of the exhaustion requirement imposed by the Prisoner Litigation Reform Act ("PLRA").   *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").   However, this broad-ranging exhaustion requirement has only been interpreted to apply to plaintiffs who are incarcerated at the time they file their federal lawsuit.   *See Lesesne v. Doe*, 712 F.3d 584, 587–88 (D.C. Cir. 2013) (collecting cases for the proposition that "[b]y its plain terms, exhaustion is not required of a plaintiff who is not . . . confined . . . indicating that that the relevant time of confinement is when the complaint is filed"); *Cofield v. Bowser*, 247 F. App'x 413, 414 (4th Cir. 2007) ("Because Coefield was not a prisoner when he filed his complaint, the PLRA exhaustion requirement is not applicable to his § 1983 action."); *Cantley v. W. Va. Reg'l Jail and Corr. Facility Auth.*, 728 F. Supp. 2d 803, 820 (S.D. W. Va. 2010) (same).

   Moreover, failure to exhaust has been determined to be an affirmative defense, rather than a pleading requirement, and a court is only entitled to sua sponte dismiss a prisoner's complaint on that basis "in the rare case when failure to exhaust is apparent from the face of the complaint."   *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 682 (4th Cir. 2005).   Accordingly, because Plaintiff's Complaint indicates that he was not a prisoner at the time of filing, the face of the complaint does not indicate that he has failed to exhaust administrative remedies under the PLRA and sua sponte dismissal on that basis is improper.

2

remove[d] the plaintiff from the POD."  (*Id*. at 12.)  For the duration of this assault, Plaintiff alleges that "[s]everal" unknown correctional officers watched, but did not intervene.  (*Id*. at 10.) In particular, he avers that "an unknown female Correction Officer . . . was in the POD tower" and watched the assault take place but did not signal for aid or otherwise take steps to break up the assault for over twenty-five minutes.  (*Id*. at 12.)  The above allegations implicate a failure to protect on the part of SCRJ officials; as alleged, they either instigated or were aware of a physical assault on the plaintiff but did nothing to intervene in that assault for a prolonged period of time.

Plaintiff also makes allegations, albeit in much less coherent fashion, that he received inadequate medical care from Prime Care staff while at SCRJ.  Some of these allegations directly relate to the above-described assault.  For example, he alleges that the assault caused injury to his hip and head and that he was not immediately seen by anyone at Prime Care despite the fact that he "could barely walk and was having dizzy spells."  (ECF No. 2 at 12; *see also id*. at 13 ("The plaintiff's hip was hurt and he had head injury.  However, when he complain[ed] he was told to sign-up for sick call which he was not seen until he got an officer to deliver a note to the Jail administrator.").)  Plaintiff does not allege that any particular Prime Care employee denied him service or seek to identify any unnamed Prime Care official responsible for that failure; rather, it appears that Plaintiff seeks to hold "Mr. Wilson," alleged to be the entity's medical administrator, liable based on the Prime Care's generalized failure to provide medical care in the wake of the assault.

The majority of Plaintiff's allegations regarding medical treatment, however, are generalized grievances that are unrelated to the injuries suffered during the inmate assault.  In particular, he alleges that "unknown medical staff" placed him an unclean cell that had previously

been inhabited by an inmate with staph infection; that "Female Medical Staff member Terry" did not take Plaintiff's medical information during intake, resulting in a three-week denial of Plaintiff's prescription medication; that "Female Medical Staff member Eva" treated him several times for high blood pressure but failed to record any information on the subject; and finally that unknown medical staff "threaten[ed]" Plaintiff shortly before the alleged assault.   (ECF No. 2 at 9.)

Finally, Plaintiff seeks to impose supervisory liability on two former West Virginia Regional Jail and Facility Authority administrators: Joe DeLong, its former executive director, and Steven Crooks, the former local administrator at SCRJ.   Plaintiff alleges that these officials were responsible for operating SCRJ in an overcrowded capacity, without regard for inmate safety, resulting in "an unsafe and inhumane condition[ ]" defined by several documented instances of inmate-on-inmate violence, sexual assault, and excessive force by officers against inmates.   (*Id.* at 10–11.)   More specifically, Plaintiff asserts that the correctional officers at South Central (and elsewhere in West Virginia) "were untrained in controlling inmate violence," that instances of assaults on inmates by other inmates were commonplace and often instigated by the correctional officers, and that DeLong and Crooks generally "failed to train Correctional Officers and Shift Leaders how to create a safe environment and defuse conflicts in the POD."   (*Id.* at 11.)   According to Plaintiff, these failures directly led to his assault and violated his Eighth and Fourteenth Amendment rights.

As relief, Plaintiff seeks five million dollars each from DeLong, Crooks, and Hunter, one million dollars from Wilson, ten thousand dollars from each unnamed defendant, punitive

damages, and "injunctive relief and an investigation of all regional jails in the State of West Virginia." (*Id.* at 13.)

Magistrate Judge Tinsley examined Plaintiff's complaint pursuant to the provisions set forth in 28 U.S.C. § 1915(e)(2)(B), the federal *in forma pauperis* statute, which requires a district court to review prisoner complaints that seek to proceed without prepayment of fees and costs and dismiss such complaints where they are frivolous, malicious, fail to state a claim upon which relief can be granted, or seek monetary relief against a defendant who is immune from such relief. Before ordering service of process on any of the named defendants, the Magistrate Judge issued his PF&R, which, as relevant here,[2] determined that Plaintiff's complaint lacked sufficient factual allegations to state any plausible claim under the Due Process Clause of the Fourteenth Amendment. (ECF No. 5 at 8.) Accordingly, it recommends that the Complaint be dismissed in its entirety for failure to state a claim upon which relief can be granted. Plaintiff objects to this recommendation, emphasizing the fact that he is proceeding pro se and highlighting the specific nature of the allegations supporting each of his claims. (ECF No. 6.)

## II.   *Legal Standard*

### A.   **Review of the PF&R**

The Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §

---

[2] The PF&R also made three other proposed findings, none of which are challenged in Plaintiff's Objections. First, it found that Plaintiff lacks standing to raise claims that do not directly involve him. (ECF No. 5 at 5.) Second, the PF&R determined that, because Plaintiff is no longer detained, his claims for declaratory and injunctive relief are mooted. (*Id.* at 6.) Finally, it recommends a finding that, to the extent the defendants are sued in their official capacity, they are immune from suit. The Court adopts these findings, but determines that Plaintiff has stated a claim for monetary damages, based on personal harm suffered, against several of the defendants named in the Complaint in their personal capacities. Thus, Plaintiff's complaint will be allowed to proceed on such claims and only such claims; all claims for declaratory or injunctive relief, official capacity claims, or claims stated on behalf of other individuals (to the extent they are asserted) are hereby **DISMISSED WITHOUT PREJUDICE**.

636(b)(1).   However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, the Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

**B.      28 U.S.C. § 1915(e)(2) Initial Screening**

The Prisoner Litigation Reform Act "imposes on the district courts a duty to screen initial filings" and "requires a district court to dismiss a complaint filed in forma pauperis 'at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'"[3]   *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (alteration in original) (quoting 28 U.S.C. § 1915(e)(2)(B)(i)–(ii)).   In determining whether a complaint states a claim upon which relief can be granted, a court is to employ the same standard that is used when reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   *See De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) ("The standards for reviewing a dismissal under § 1915(e)(2)(B)(ii) are the same as those for reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6)."); *Richards v. Jones*, 31 F. Supp. 3d 630, 633 (D. Del. 2014) ("The legal standard for dismissing a complaint for failure to state a claim pursuant to

---

[3] Because Plaintiff is a prisoner seeking redress from officers and employees of governmental entities, an additional screening provision of the PLRA, 28 U.S.C. § 1915A, is also applicable to his complaint.   As relevant here, that statute requires a court to review, before docketing if feasible, every prisoner complaint that seeks redress from governmental entities or the officers or employees of such entities.   Section 1915A uses language identical to § 1915(e), and, "[b]ecause of their obvious similarity, courts may have the option in a particular case of dismissing [*in forma pauperis*] prisoner litigation for failure to state a claim under more than one of these provisions."   *McLean v. United States*, 566 F.3d 391, 404 (4th Cir. 2009).   Accordingly, because the present case is such a case where § 1915A and § 1915(e) both apply, and because the two statutes set forth the same standard, the Court does not find it necessary to independently address the application of § 1915A.

§ 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions." (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999))). Accordingly, "[d]ismissal is proper only if the plaintiff has failed to 'present factual allegations that state a claim for relief that is plausible on its face.'" *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)).

Further, the Court is mindful that Plaintiff is proceeding pro se.   As such his pleadings will be accorded liberal construction.   *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).   Liberal construction of pleadings is "particularly appropriate where, as here, there is a pro se complaint raising civil rights issues."   *Jehovah*, 798 F.3d at 176 (quoting *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009)).

### III.    Discussion

Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.   Importantly, § 1983 is not itself the source of any substantive rights.   Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."   *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).   "A federal civil rights claim based upon § 1983 has two essential elements: '[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color

of state law.'" *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (alteration in original) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

In this case, Plaintiff's Complaint can be divided into two distinct challenges to the conditions of his pretrial detention: (1) that various prison officials failed to protect him from obvious safety risks (the "failure to protect claim"); and (2) that various medical professionals denied him adequate medical care (the "inadequate medical care claim").   Both types of claims are well-recognized when asserted by prison inmates under the Eighth Amendment.   *See Farmer v. Brennan*, 511 U.S. 825 (1994) (recognizing that prison officials have a constitutional duty to protect prisoners from violence at the hands of other prisoners); *Estelle v. Gamble*, 429 U.S. 97 (1976) (recognizing the state's duty to attend to an inmate's serious medical needs).   With respect to both such claims, the standard of culpability applicable to prison officials "is one of 'deliberate indifference' to inmate health or safety."   *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)); *see also Pressly v. Hutto*, 816 F.2d 977, 989 (4th Cir. 1987) ("The eighth amendment protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to specific known risks of such harm, just as it protects against harm resulting from deliberate indifference of prison officials to serious medical needs." (citations omitted)).

Plaintiff, however, was a pretrial detainee at the time his claims arose, and although he invokes the Eighth Amendment, it is well-established that "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."   *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). The Eighth Amendment proscribes "cruel and unusual punishment," but because they have not yet

8

received any formal adjudication, "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015) (quoting *Ingraham*, 430 U.S. at 671–72 n.40).  As a result, conditions of confinement claims by pretrial detainees sound in the Fourteenth Amendment's Due Process Clause rather than in the Eighth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535–36 and n.16 (1979); *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) ("Because Martin was a pretrial detainee and not a convicted prisoner at the time of the alleged denial [of medical care], this claim is governed by the due process clause of the fourteenth amendment rather than the eighth amendment's prohibition against cruel and unusual punishment."); *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (assessing a pretrial detainee's claims that the government denied him medical care and failed to protect him from a substantial risk of physical harm under the Fourteenth Amendment).

Nonetheless, because "[p]retrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment," *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001), courts generally apply the standards developed in Eighth Amendment claims to due process claims brought by pretrial detainees.  *See, e.g., Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (finding that no determination as to whether the plaintiff was a pretrial detainee or a convicted prisoner was necessary because "the standard in either case is the same—that is, whether a government official has been 'deliberately indifferent to any [of his] serious medical needs'" (alteration in original) (quoting *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990))); *Parrish*, 372 F.3d at 302 and n.11 (noting that the standard applicable to a pretrial detainee's claims of denial of medical care and failure to protect

"is the same as that which applies in cases arising under the Eighth Amendment," and accordingly finding cases applying Eighth Amendment standards "relevant to the Fourteenth Amendment claim here").

Thus, whether assessing a failure to protect claim or a claim based on inadequate medical care, a showing of deliberate indifference will sustain a claim under the Fourteenth Amendment:

> In cases where the government is accused of failing to attend to a detainee's serious medical needs, and in cases where the government is accused of failing to protect a detainee from a substantial risk of physical harm, 'conduct that amounts to deliberate indifference . . . is viewed as sufficiently shocking to the conscience that it can support a Fourteenth Amendment claim.'

*Parrish*, 372 F.3d at 302 (quoting *Young*, 238 F.3d at 575); *see also Marshall v. Abbasi*, 109 F. App'x 609, 610 n.2 (4th Cir. 2004) (noting that, "with respect to claims of deliberate indifference to medical needs, a pretrial detainee's due process rights are coextensive with a convicted prisoner's Eighth Amendment rights"); *King-Fields v. Leggett*, Civil Action No. ELH–11–1491, 2014 WL 694969, at *10 (D. Md. Feb. 19, 2014) ("A failure-to-protect claim brought by a pre-trial detainee constitutes a due process claim under the Fourteenth Amendment, but the same standards apply as for an Eighth Amendment claim brought by a convicted prisoner.").

Accordingly, the Court will assess each of Plaintiff's claims under the deliberate indifference standard and with reference to case law developed in response to Eighth Amendment claims.   Deliberate indifference is a subjective standard, "lying somewhere between the poles of negligence at one end and purpose or knowledge at the other."   *Farmer*, 511 U.S. at 836.   A prison official exhibits deliberate indifference where he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837.

Nevertheless, although it "remains open to . . . officials to prove that they were unaware even of an obvious risk to inmate health or safety," *id.* at 844, the subjective standard does not allow a prison official to "hide behind an excuse that he was unaware of a risk, no matter how obvious." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995). Whether a given prison official exhibits deliberate indifference is "a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842; *see also White by White v. Chambliss*, 112 F.3d 731, 737 (4th Cir. 1997) (noting that a claim of deliberate indifference "implies at a minimum that defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding the notice"); *Brice*, 58 F.3d at 105 ("[A]n injury might be so obvious that the factfinder could conclude that the [prison official] *did* know of it because he could not have failed to know of it."). Where the evidence demonstrates that an official "merely refused to verify 'underlying facts that he strongly suspected to be true,' which, if verified, would have compelled him to realize that the claimant needed immediate medical attention, or that he 'declined to confirm inferences of risk that he strongly suspected to exit,'" *id.* (quoting *Farmer*, 511 U.S. at 843 n.8), that official can be held liable notwithstanding his actual ignorance of the threat to inmate health or safety at issue.

For the reasons stated herein, the Court finds that Plaintiff has stated a failure to protect claim against both the named and unnamed SCRJ officials described in the complaint, but has failed to state a claim based on inadequate medical care against any Prime Care official, named or unnamed. Accordingly, the Court **SUSTAINS** Plaintiff's Objections as they relate to his failure to protect claim, and allows his claims to proceed against Officer Hunter, Joe DeLong, Steven Crooks, and, to the extent they can be identified, the unnamed SCRJ officials who participated in

Plaintiffs assault by failing to take reasonable measures to intervene.   The Court **OVERRULES** Plaintiff's Objections as they relate to his inadequate medical care claim and **ORDERS** that all Prime Care Medical officials, named and unnamed, be **DISMISSED WITHOUT PREJUDICE** from the current action.

## A.      Failure to Protect

In *Farmer*, the Supreme Court recognized that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."   511 U.S. at 833 (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823 (1988)). Such violence is not appropriately characterized as punishment and "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"   *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Odom v. S.C. Dep't of Corrs.*, 349 F.3d 765, 770 (4th Cir. 2003) ("[G]ratuitously allowing the beating . . . of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency." (alteration in original) (quoting *Farmer*, 511 U.S. at 833)).

To establish a failure to protect claim, a prisoner must make two showings: first, that he suffered significant injury or was "incarcerated under conditions posing a substantial risk of serious harm;" and second, that the prison official at issue had a "sufficiently culpable state of mind."   *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 834). Under the first prong—*i.e.*, the objective inquiry, "a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions," *De'Lonta*, 330 F.3d at 634 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)), "or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions," *id.*

12

(citing *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993)).   The second showing is subjective and, as noted above, requires proof of deliberate indifference.   *See Toomer v. Baltimore City Det. Ctr.*, Civil Action No. DKC 12–0083, 2014 WL 4678712, at *3 (D. Md. Sept. 18, 2014) ("In order to prevail on a claim of failure to protect from violence, [a plaintiff] must establish that [the defendants] exhibited deliberate or callous indifference to a specific known risk of harm." (citing *Pressly*, 816 F.2d at 979)).   Ultimately, "the test is whether the [prison officials] know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so."   *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

Here, Plaintiff alleges that he was assaulted by two other inmates for over twenty-five minutes, and that the resulting injuries to his head and hip left him with dizzy spells and unable to walk.   At this stage in the litigation, the Court has little trouble finding that such allegations satisfy the objective prong of a failure to protect claim.   The Court will address in turn the culpability of the individual defendants, named and unnamed, alleged to be responsible for that injury.

### i.    Officer Hunter

As alleged in the Complaint, Officer Hunter directly instigated a violent attack on the plaintiff by branding him among other inmates with the derogatory label of child molester.   In a prison environment, there can be little doubt that such a label exposes an inmate to an increased threat of physical attack from other inmates.   *See Anderson v. Chapman*, 604 F. App'x 810, 811 (11th Cir. 2015) ("[I]nmates charged with crimes against children are frequent targets of assault at the hands of other inmates."); *Norman v. Schuetzle*, 585 F.3d 1097, 1112 (8th Cir. 2009) (Bye, J., concurring in part and dissenting in part) (noting that "child molesters are viewed with disdain"

13

within the prison population); *Davis v. Muscarella*, 615 F. Supp. 2d 296, 302 (D. Del. 2009) ("It is well known that 'convicted child molesters may be in danger in a general prison population.'" (quoting *Brigden v. State ex rel. Okla. Dep't of Corrs.*, 129 F.3d 130, at *6 (10th Cir. 1997))). Indeed, courts have found that negatively labeling an inmate can evince deliberate indifference to that inmate's safety whether or not the label ever actually results in any physical attack. *See Jordan v. Hooks*, Civil Action No. 6:13-cv-2247-BHH, 2015 WL 5785504, at *3 (D.S.C. Sept. 29, 2015) (noting that "[n]umerous courts have allowed plaintiffs to survive summary judgment where the plaintiff alleges only *an increased risk* of attack," absent any actual physical injury, as the result of being labeled a snitch).

Here, Plaintiff alleges not only that Officer Hunter told other inmates that Plaintiff was a child molester, but further that such disclosure led directly to a violent and prolonged physical assault that actually caused serious physical injuries. Given the highly unfavorable status of child molesters in prison populations, such allegations sufficiently allege Officer Hunter's deliberate indifference by creating an inference that Officer Hunter made the disclosure with the intent to cause Plaintiff harm. *See Brown v. Narvais*, 265 F. App'x 734, 735–36 (10th Cir. 2008) (taking note of well-established case law indicating that labeling an inmate a snitch can support an Eighth Amendment claim, determining that "the same principles apply" to the "incendiary badge of prison infamy" associated with being a child molester, and concluding that "allegations of a prison officer's deliberate disclosure of dangerous information about an inmate's status are sufficient to state a claim under the Eighth Amendment"); *Moore v. Wetzel*, Civil Action No. 14–1709, 2015 WL 7163114, at *3 (W.D. Pa. Nov. 13, 2015) ("[I]t is well-established that labeling an inmate a snitch or a child molester 'may give rise to an Eighth Amendment violation if the prison official

14

acted with deliberate indifference to a substantial risk of serious harm to the inmate.'" (quoting *Tabb v. Hannah*, Civil No. 1:10–CV–1122, 2012 WL 3113856, at \*6 (M.D. Pa. July 30, 2012))).

Not only did Officer Hunter fail to protect Plaintiff from violence at the hands of other inmates, but he directly incited that violence.  Allegations of such conduct, taken as true, state a claim for deliberate indifference to Plaintiff's safety.

### ii.    Unnamed SCRJ Officials

Similarly, Plaintiff's claims of total inaction on the part of various SCRJ officials during the assault are sufficient to survive initial screening and allow Plaintiff the opportunity to discover the identity of the culpable prison officials.

A correctional officer does not have a "constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995); *see also Winfield v. Bass*, 106 F.3d 525, 533 (4th Cir. 1997) (finding that the defendant correctional officers "violated no clearly established right of [plaintiff's] because they were not required to risk serious bodily harm by entering, unarmed, into a fray with an armed and violent assailant during the short period before assistance arrived").  At the same time, however, officers do retain an obligation to take reasonable action to prevent an inmate from suffering harm at the hands of other inmates, and a correctional officer acts in a deliberately indifferent manner if he "stands by as a passive observer and *takes no action whatsoever* to intervene during an assault."  *Odom*, 349 F.3d at 773 (citing *Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir. 1978)); *see also Brown*, 612 F.3d at 723 (finding that prisoner's allegation that an officer was present at the time of an assault by another inmate stated a failure to protect claim because, from that allegation, "[a] reasonable person could infer . . . that [the

15

defendant officer] was aware of the attack, and that his failure to intervene represented deliberate indifference to a serious risk of harm"); *Kartman v. Markle*, 582 F. App'x 151, 154 (4th Cir. 2014) (finding summary judgment inappropriate where the plaintiff's verified complaint "provide[d] undisputed evidence that [the defendant officer] watched [the plaintiff] being assaulted and unreasonably delayed breaking up the fight").

Here, Plaintiff alleges that one "unknown female" sat in the POD tower and watched an entire twenty-five minute assault without doing anything to prevent it or protect the plaintiff. (ECF No. 2 at 12.)   Further, he alleges that several unknown guards similarly sat idly by and watched the assault for several minutes without taking any action.   (*Id*.)   Plaintiff does not allege that his assailants were armed or that intervention would have been physically dangerous for the numerous correctional officers who failed to intervene.   Taken as true and liberally construed, such allegations state a claim for failure to protect, and Plaintiff should have the opportunity, through further court proceedings, to identify the officers involved.   *See Cole v. RHU Officers John Doe*, No. Civ. 1:CV-04-1218, 2005 WL 2648342 (M.D. Pa. Oct. 17, 2005) ("Generally, courts will allow claims based upon John Doe defendants to go forward at the initial stages of an action, often surviving initial screening by the Court pursuant to 28 U.S.C. § 1915 or a motion to dismiss, because they may be found and named later through the discovery process." (citing *K.J. ex rel. Lowry v. Div. of Youth and Family Servs.*, 363 F. Supp. 2d 728, 740 (D.N.J. 2005))).

### iii.   Supervisors: DeLong and Crooks

It is well-established that a government official cannot be held liable under § 1983 solely on the basis of *respondeat superior*.   *See, e.g. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).   Nonetheless, "[t]he principle is firmly entrenched that supervisory officials may be held liable in

certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).   In such circumstances, liability is based not on *respondeat superior*, but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (citing *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)).   In general, "a supervisory power cannot be liable, under Section 1983, for the actions of its subordinates unless it is on fair *notice* that subordinates are engaged in constitutional or statutory deprivations" and "consciously chose[ ] a particular course of action in response." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 703 (E.D. Va. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).   Thus, in order to avoid having supervisory liability collapse into *respondeat superior*, a supervisory official will not be liable under § 1983 unless that official's "'edicts or acts may fairly be said to represent official policy,' and if [he] ha[s] promulgated a custom or policy that caused a constitutional violation." *Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F. Supp. 2d 558, 582 (E.D. Va. 2011) (quoting *Monell*, 436 U.S. at 694).

In order to establish a supervisor's § 1983 liability, a plaintiff "must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and 'an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'"  *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999) (quoting *Shaw*, 13 F.3d at 799).[4]   One way in which a supervisor furthers a policy of deliberate indifference

---

[4] In *Shaw*, the Fourth Circuit stated that a plaintiff seeking to establish supervisory liability must make the following three- part showing:

(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in

in this context is by failing to train his subordinate employees.   "The imposition of supervisory liability on a failure to train theory is merely a more specific formulation of the *Monell* 'official policy or custom' inquiry wherein the official 'policy or custom' is the training program (or lack thereof)."   *Brown*, 308 F. Supp. 2d at 702–03; *see also Newbrough*, 822 F. Supp. 2d at 582 (noting that, under both Supreme Court and Fourth Circuit precedent, failure to train claims are treated as a subset of policy or custom supervisory liability claims); *Layman v. Alexander*, 294 F. Supp. 2d 784, 794 (W.D.N.C. 2003) "[A] supervisor's failure to train his employees can subject him to liability where the failure to train reflects a 'deliberate indifference' to the rights of citizens." (citations omitted)).

When a plaintiff's claim of supervisory liability is based on a failure to train, he must prove the following three elements:

> (1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights.

*Brown*, 308 F. Supp. 2d at 701.   "A plaintiff can allege the deliberate indifference element in two ways."   *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 538 (E.D. Va. 2015).   First, "where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations."   *Gallimore v. Henrico Cty. Sch. Bd.*, 38 F. Supp. 3d 721, 726 (E.D. Va. 2014) (quoting

---

conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

13 F.3d at 799 (internal quotations and citations omitted).

*Harris*, 489 U.S. at 397 (O'Connor, J., concurring in part and dissenting in part)).   "Second, 'a failure to train claim also can be based on a supervisory power's failure to train its employees concerning an obvious constitutional duty that the particular employees are certain to face.'" *Moody*, 93 F. Supp. 3d at 538 (quoting *Gallimore*, 38 F. Supp. 3d at 726).

As discussed above, Plaintiff has adequately alleged that SCRJ subordinate employees violated his constitutional rights by inciting an assault against the plaintiff by fellow inmates and then standing idly by for an unreasonable period of time as that assault took place.   The question, then, becomes whether the administrators' failures with respect to training these subordinates evince deliberate indifference to the right of detainees to be from violence at the hands of other detainees.   At this stage in the litigation, Plaintiff has sufficiently alleged such deliberate indifference.

Plaintiff's overarching contention is that the correctional officers at West Virginia regional jails were poorly trained, and that this lack of training led to violence, officer corruption, and generally unsafe conditions for the inmates.   In support, Plaintiff cites examples of inmate-on-inmate assaults, excessive force complaints against individual officers, and instances of officers instigating inmate violence against other inmates that tend to show a pattern of constitutional violations similar to the one Plaintiff currently alleges, both at SCRJ specifically (Crooks's domain) and within the West Virginia regional jails more broadly (the province of DeLong). Moreover, Plaintiff alleges that DeLong and Crooks failed to train their officers in the specific area of controlling inmate violence, and that this failure manifested itself in Plaintiff being assaulted by another inmate, at the instigation of an officer, while other correctional officers stood idly by and

allowed the violence to continue.   In other words, the constitutional injury Plaintiff alleges is the precise kind that the administrators allegedly failed to train their subordinates to prevent.

Given a correctional officer's constitutional duty to make reasonable efforts to protect inmates from violence at the hands of other inmates, allegations that the supervisory officials failed to train their officers with respect to controlling inmate violence and "defus[ing] conflict in the POD," (ECF No. 2 at 11), are sufficient to state a claim for deliberate indifference to the constitutional rights of SCRJ inmates.  *See DeHaven v. W. Va. Div. of Corrs.*, No. 2:14–CV– 16156, 2014 WL 2765612, at *4 (S.D. W. Va. June 18, 2014) (emphasizing that "[t]he need for training to avoid and halt violence by fellow inmates is clearly obvious for correctional officers in a prison environment," and finding allegations that supervisory officials "failed to adequately train their correctional officers to protect the known and substantial risk of harm by other inmates" sufficient to state a supervisory liability claim for failure to train under § 1983).

Given such deliberate indifference, the Court finds that Plaintiff's complaint has adequately alleged an "affirmative causal link," between the injury suffered—at the hands of another inmate, at the instigation of a correctional officer—and DeLong's and Crooks's failure to train their subordinates to prevent inmate-on-inmate violence.   Accordingly, at this early stage of the litigation, Plaintiff's claims will be allowed to proceed against DeLong and Crooks.

For the reasons discussed, the Court **SUSTAINS** Plaintiff's Objections, insofar as they relate to his failure to protect claim against SCRJ officials.

### B.    Deliberate Indifference to Serious Medical Needs

While Plaintiff's Complaint asserts several facts supporting his allegations that several SCRJ officials were deliberately indifferent to the injuries he suffered as the result of an assault,

20

its allegations with respect to medical care are much less clear.   Plaintiff makes several allegations quibbling with the level of care provided by Prime Care prior to the assault, but his allegations regarding a lack of care after the assault boil down to the unadorned assertion that "Defendant Wilson's medical staff from Prime Care Medical . . . . offered the plaintiff no medical care after the assault."   (ECF No. 2 at 12.)   Even construing Plaintiff's Complaint as it must at this stage in the litigation, the Court cannot determine that such allegations state a plausible claim for relief.

The Supreme Court has recognized that state governments have an obligation to provide medical care for the inmates they incarcerate, and accordingly that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."   *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).   A claim based on deliberate indifference to serious medical needs must satisfy a similar two-prong test to that applicable to failure to protect claims.   As with a failure to protect claim, the first prong is objective and focuses on the severity of the plaintiff's harm, while the second is subjective and focuses on the defendant's deliberate indifference.   *See Brice*, 58 F.3d at 104 ("To establish . . . a constitutional violation, a claimant must prove that, objectively assessed, he had a 'sufficiently serious' medical need to require medical treatment, and that a [prison official], subjectively aware of the need and of its seriousness, nevertheless acted with 'deliberate indifference' to it by declining to secure available medical attention." (citations omitted)).

"Objectively, the inmate's medical condition must be 'serious'—'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"   *Jackson*, 775 F.3d at 178 (quoting

21

*Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)); *see also Scott v. Clarke*, 64 F. Supp. 3d 813, 822 (W.D. Va. 2014) (collecting cases for the proposition that "a threshold element of an Eighth Amendment claim premised upon allegations of deficient medical care is the claimant's showing that the health problem of which she complains involves a 'serious medical need'").   As for the subjective component, deliberate indifference is a "higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference."   *Jackson*, 775 F.3d at 178.   "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."   *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *see also Jackson*, 775 F.3d at 178.

Under this standard, Plaintiff's claim must fail.   His allegations regarding inadequate treatment prior to the assault, to the extent they even describe serious medical needs, represent nothing more than disagreements between inmate and physician over proper medical care.   (*See* ECF No. 2 at 9 (alleging medical staff member "Eva" failed to record Plaintiff's blood pressure information); *id*. at 12 (alleging medical staff member "Terry" did not properly record his medical information during intake, causing Plaintiff to be without unspecified medication for an unspecified medical condition for three weeks); *id*. at 9, 12 (alleging that unidentified medical staff "threaten[ed]" Plaintiff in some unspecified way shortly before the assault); *id*. at 9 (alleging that unidentified medical staff members did not properly clean an area of the hospital before placing Plaintiff in it).)

22

Moreover, Plaintiff's allegations of a denial of medical care following the assault lack specificity.   Other than the blanket statement that he was denied medical care in the immediate aftermath of his assault, the Complaint mentions only that, despite Plaintiff's injuries, "when he complain[ed] he was told to sign-up for sick call" and "was not seen until he got an officer to deliver a note to the Jail administrator."   (*Id*. at 13.)   This allegation suggests that Plaintiff did in fact receive some medical attention following the assault, and that his primary objection to that treatment is to its timing.   As this Court has previously noted, such complaints about the "frequency, duration, and provider" of medical treatment generally do not rise to the level of constitutional concern.   *Basham v. Corr. Med. Servs., Inc.*, Civil Action No. 5:06-cv-00604, 2007 WL 1468775, at *5 (S.D. W. Va. May 18, 2007) (noting that "the prohibition against the infliction of cruel and unusual punishment does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation" (quoting *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995))).

Plaintiff does not even attempt to identify any specific individual responsible for the alleged denial of care, and even if he did his allegations would be insufficient to state a claim for supervisory liability against Prime Care's medical director.   Plaintiff does not allege that Mr. Wilson directly took any action to deny him medical treatment and, as noted above, a supervisory official cannot be held responsible under § 1983 based on a theory of *respondeat superior*.   There is simply nothing in the Complaint suggesting that Mr. Wilson was aware of a serious risk that detainees such as Plaintiff would be denied medical treatment and failed to respond to that risk in a way that would demonstrate deliberate indifference.   *See Barnes v. Wilson*, 110 F. Supp. 3d 624,

631–32 (D. Md. 2015) (noting that supervisory liability in the context of a serious medical needs case requires a showing that "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care, (2) that the supervisory defendants deliberately interfered with the prison doctors' performance, or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations" (quoting *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990))).

Accordingly, the Court agrees with the Magistrate Judge that Plaintiff has failed to state a claim based on deliberate indifference to serious medical needs and **OVERRULES** Plaintiff's Objections as they relate to that claim and all Prime Care officials.

### IV.    Conclusion

For the reasons stated herein, the Court **SUSTAINS IN PART** Plaintiff's Objections, (ECF No. 6), **ADOPTS** the PF&R, (ECF No. 5), only to the extent it is consistent with this Memorandum Opinion and Order, and **RE-REFERS** this case to Magistrate Judge Tinsley for further proceedings consistent with this Memorandum Opinion and Order.

Consistent with the recommendation in the PF&R, the Court **DISMISSES WITHOUT PREJUDICE** Mr. Wilson and all other unnamed Prime Care Medical, Inc. officials from the current action.   The Court **DIRECTS** Magistrate Judge Tinsley to order service upon Defendants Joe DeLong, Steven Crooks, and Officer Hunter, and allow Plaintiff's failure to protect claim to proceed against the unnamed SCRJ officials mentioned in the complaint, to the extent Plaintiff is able to identify such officials through further proceedings.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        June 27, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE