# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

ALBERT WILLIAM LACY,

        Plaintiff,

v.                               CIVIL ACTION NO. 2:13-cv-14813

JOE DELONG, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is the Motion for Summary Judgment of Defendants Joe DeLong and Steven Crook. (ECF No. 76.) By Standing Order entered on April 8, 2013, and filed in this case on June 19, 2013, this action was referred to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings and a recommendation for disposition. (ECF No. 3.) The Court **VACATES** the order filed on June 19, 2013, (ECF No. 3), designating Magistrate Judge Dwane L. Tinsley to submit proposed findings of fact and recommendation. The undersigned will now proceed to consider the case.

### I.     BACKGROUND

The Court previously dismissed the claims against the PrimeCare Medical defendants and Correctional Officer Hunter. (ECF No. 7; ECF No. 72.) Thus, the only claims still before the Court are Plaintiff Albert William Lacy's ("Lacy") Fourteenth Amendment claims against unidentified correctional officers who allegedly failed to intervene in the alleged assaults described

1

in the Complaint, and his supervisory liability claims against Joe DeLong, the former Executive Director of the West Virginia Regional Jail & Correctional Facility Authority ("WVRJCFA"), and Steven Crook, the former Administrator of the South Central Regional Jail ("SCRJ"), where Lacy's claims arose.

With respect to the remaining claims, Lacy alleges that, on an unspecified date, while he was a pre-trial detainee at the SCRJ, he was involved in altercations with two unidentified inmates, lasting for over 25 minutes. (Compl., ECF No. 2 at 12; Dep. of Albert Lacy, ECF No. 76 at 6 [Lacy Dep. p. 14].) Lacy's Complaint alleges that "Correctional Officer Hunter instigate[d] an assault on Plaintiff Lacy by telling two (2) white inmates that the plaintiff was a child molester." (ECF No. 2 at 12.) During his deposition, Lacy testified that, on the day of the assaults, he heard Correctional Officer Hunter tell an inmate in the cell next to his that the plaintiff was a "baby raper" or "was in jail for raping a baby," and that this statement led to his assaults by the other inmates. (ECF No. 76 at 9, 11 [Lacy Dep. pp. 19, 21].) However, Lacy could not recall in what section of the jail these incidents took place. (*Id*. at 9-10 [Lacy Dep. pp. 19-20].)

Lacy further alleges that other correctional officers observed these assaults and had the opportunity to intervene to stop the same, but failed to do so. However, Lacy is unable to identify any of those individuals. (Id. at 22-23 [Lacy Dep. pp. 47-48].) Finally, Lacy alleges that Defendants Joe DeLong and Steve Crook, as the former supervisors of these correctional officers, should be held liable for the allegedly unconstitutional conduct of their subordinates because the jail was overcrowded and staffed by improperly trained correctional officers.

Discovery in this matter concluded on January 15, 2018. On January 25, 2018, Defendants DeLong and Crook filed a Motion for Summary Judgment, (ECF No. 76), and a

2

Memorandum of Law in support thereof, (ECF No. 77). On February 5, 2018, Lacy filed a Motion in Opposition of Summary Judgment. (ECF No. 78.) The Defendants did not file a reply brief. The motion documents will be further addressed in detail *infra*.

## II. STANDARD OF REVIEW

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's claim. *Id*. at 322–23. Once the moving party demonstrates such a lack of evidence, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. *Id*. at 325; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Accordingly, summary judgment will generally be granted unless a reasonable jury could render a verdict for the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 247–48.

A court must not resolve disputed facts or weigh the evidence, and may not make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp.2d 751 (N.D. W. Va. 2000).

### III. DISCUSSION

Lacy contends that Defendants DeLong and Crook operated the SCRJ in an overcrowded and unsafe condition. More specifically, Lacy contends that these defendants, as supervisors, failed "to train correctional officers and shift leaders on how to create a safe environment and defuse conflict in the POD[.]" (ECF No. 2 at 11.)

It is well-established that a government official cannot be held liable under § 1983 solely on the basis of *respondeat superior*." *See, e.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Nonetheless, "[t]he principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). In such circumstances, liability is based not on *respondeat superior*, but upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on

4

those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (citing *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)).

In order to establish a supervisor's § 1983 liability, a plaintiff "must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and 'an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'" *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999). In other words, a plaintiff must demonstrate the supervisor's "deliberate indifference" to unconstitutional conduct of which he is actually aware.

Generally, in order to demonstrate supervisory liability, a plaintiff must establish that the supervisor had fair notice of the subordinate's unlawful conduct and "consciously chose[] a particular course of action in response." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 703 (E.D. Va. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Thus, "in order to avoid having supervisory liability collapse into *respondeat superior*, a supervisory official will not be held liable under § 1983 unless that official's 'edicts or acts may fairly be said to represent official policy and if [he] [h]as promulgated a custom or policy that caused a constitutional violation.'" *Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F. Supp. 2d 558, 582 (E.D. Va. 2011) (quoting *Monell*, 436 U.S. at 694).

The deliberate indifference element may be established in two ways. First, "where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations," *Gallimore v. Henrico Cty. Sch. Bd.*, 38 F. Supp. 3d 721, 726 (E.D. Va. 2014); or second, where "a supervisory power's failure to train concerning an obvious constitutional duty

5

that particular employees are certain to face" can be demonstrated. *Moody v. City of Newport News*, 93 F. Supp. 3d 516, 538 (E.D. Va. 2015).

Therefore, one way in which a supervisor may further a policy of deliberate indifference in this context is by failing to train his subordinate employees. "The imposition of supervisory liability on a failure to train theory is a more specific formulation of the Monell 'official policy or custom' inquiry wherein the official 'policy or custom' is the training program (or lack thereof)." *Brown*, 308 F. Supp. 2d at 702–03; *see also Newbrough*, 822 F. Supp. 2d at 582 (noting that, under both Supreme Court and Fourth Circuit precedent, failure to train claims are treated as a subset of policy or custom supervisory liability claims). The following elements must be met in order to recover on a supervisory liability claim premised on a failure to train:

> (1) the subordinates actually violated the plaintiff's constitutional or statutory rights; (2) the supervisor failed to train properly the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights.

*Brown*, 308 F. Supp. 2d at 701. Thus, Lacy must demonstrate all of these elements in order to recover against defendants DeLong and Crook herein.

Following the close of discovery, on January 25, 2018, DeLong and Crook filed a Motion for Summary Judgment, (ECF No. 76), and a Memorandum of Law in support thereof, (ECF No. 77), asserting that Lacy has failed to put forth any evidence that these defendants were personally aware of a substantial risk of harm to Lacy prior to the alleged assaults. They note that, in his deposition, Lacy stated that he did not recall asking for placement in protective custody prior to this incident, and he admitted that he did not submit any official requests or grievances to that effect prior thereto. (ECF No. 76 at 47; ECF No. 77 at 4.) Lacy further admitted that he has no

6

evidence that Correctional Officer Hunter had previously instigated other fights between inmates that would have placed these supervisors on notice of such conduct. (ECF No. 76 at 42; ECF No. 77 at 4.) Thus, these defendants contend that Lacy failed to put forth any evidence that he made jail staff, particularly, DeLong and Crook, aware of a specific risk to his health or safety. (ECF No. 77 at 4–5.) Consequently, DeLong and Crook assert that they may not be held liable under these circumstances. (*Id*.)

DeLong and Crook further contend that they are entitled to qualified immunity on Lacy's claims because he has not demonstrated that that their conduct violated any clearly-established federal law. (ECF No. 77 at 6–7.) The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability on civil damages insofar as their conduct does not violate a clearly established statutory right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has further reiterated that the requisite "clearly established law" should not be defined "at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017).

The functions of supervision and training are widely treated as discretionary functions. Relying on the clearly-established precedent in *City of Canton v. Harris*, 489 U.S. 378 (1989), in which the Supreme Court addressed a municipal liability claim grounded in a failure to train theory, this Court found that "the need for training to avoid and halt violence by fellow inmates is clearly obvious for correctional officers in a prison environment" and in failing to address the inadequacy thereof, a supervisor "can reasonably be said to have been deliberately indifferent to the need." *DeHaven v. W. Va. Div. of Corr.*, No. 2:14-cv-16156, 2014 WL 2765612, *4 (S.D. W. Va. June 18, 2014) (Goodwin, Judge) (quoting *Harris*, 489 U.S. at 390). "In that event, the failure

7

to provide proper training may fairly be said to represent a policy for which the [supervisor] is responsible and for which the [supervisor] may be held liable if it causes actual injury." *Id*.

The Complaint contends that DeLong and Crook's subordinate officers instigated and failed to reasonably intervene in the alleged assaults, and that DeLong and Crook should be held liable because they failed to adequately train these subordinates to control such inmate violence. Even assuming that Lacy could establish that the conduct of the subordinate officers violated his constitutional rights (which he has failed to do), in order to overcome qualified immunity, Lacy must demonstrate specific evidence showing that DeLong and Crook failed to properly train correctional officers with respect to controlling inmate violence and that such failure led to the assaults and Lacy's injury herein. However, Lacy has failed to meet this burden.

As noted above, the party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex*, 477 U.S. at 32–33. "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." *Temkin v. Frederick Cty. Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Anderson*, 477 U.S. at 247–48). As the Supreme Court further noted in *Anderson*, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256.

On February 5, 2018, Lacy filed a Motion in Opposition of Summary Judgment ("Lacy's Response"). (ECF No. 78.) Lacy first cites to Rule 56(d) of the Federal Rules of Civil Procedure, which provides:

8

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "[G]reat weight [is placed] on the Rule [56(d)] affidavit, believing that a party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirements of Rule [56(d)] to set out reasons for the need for discovery in an affidavit." *Holbert v. OMG, LLC*, No. 1:12CV159, 2013 WL 5838673, at *2 (N.D. W. Va. Oct. 30, 2013) (quoting *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

> To effectively assert a Rule 56(d) defense to a summary judgment motion, the non-movant "must file an affidavit explaining (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine [dispute] of material fact, (3) what effort the affiant has made to obtain those facts, and (4) why [those efforts were] unsuccessful [.]" *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir.1989) (citing *Burlington Coat Factory Warehouse Corp.*, 769 F.2d at 925–27); accord, *Crystalline H20, Inc.*, 105 F.Supp.2d at 6; *Young v. Corbin*, 889 F.Supp. 582, 584–85 (N.D.N.Y.1995) (McAvoy, J.).

*Justice v. Wiggins*, No. 9:11-CV-419 GLS/DEP, 2014 WL 4966896, at *6 (N.D.N.Y. Sept. 30, 2014). Moreover, a Rule 56(d) motion should be made before the close of discovery. *Id*. (citing *Anderson*, 477 U.S. at 250 n.5). In the instant matter, Lacy has failed to comply with these requirements.

Rather, after the close of discovery, during which Lacy did not file any motions to compel, and after the Defendants filed their Motion for Summary Judgment, Lacy now states that he cannot present facts to justify his opposition because the defendants "are being protected by the insurance

company and cannot provide the discovery necessary . . . ." (ECF No. 78 at 1.) Lacy's Response further suggests that there may be an investigative report concerning his attack that was prepared pursuant to Policy and Procedure Statement 3036, which Lacy has attached to his Response. (ECF No. 78-1 at 1–8.) Lacy has also attached his discovery requests served on Defendants DeLong and Crook, and their responses thereto. (*Id*. at 9–20.)

Significantly, much of what Lacy sought in discovery from defendant DeLong consisted of materials that he does not possess, because as a former employee, he is not the custodian of such records. Steve Crook, who is still employed by the WVRJCFA, provided records including Lacy's booking file and incident reports, none of which has been made a part of the record before the court. Crook objected to providing training plans for facility security reasons. Lacy failed to seek judicial intervention concerning any of the defendants' objections to these discovery requests. The remainder of Lacy's Response appears to be responding in a conclusory manner to each of the defenses raised in the Answer filed by DeLong and Crook on January 3, 2018, (ECF No. 74).

In his Response, and during his deposition, Lacy appears to suggest that the WVRJCFA has a policy under which inmates accused of sexual offenses against minors are supposed to be screened and segregated from the general population. However, Lacy has not produced any such policy or other evidence to demonstrate that, as an accused sex offender, jail officials were required to place him in protected or segregated custody, and he admitted that he never requested such custody. Rather, during his deposition, Lacy stated that he was relying upon the Prison Rape Elimination Act ("PREA"), which addresses sexual assaults in prison. However, Lacy further admitted that he was not subject to a sexual assault. (ECF No. 76 at 12–14 [Lacy Dep. pp. 31–

33].) Thus, PREA appears to be inapplicable to his case, and Lacy has not demonstrated any inadequate training in this regard.

Moreover, Lacy has failed to provide any training records or other evidence to demonstrate that correctional officers at the SCRJ were improperly trained in controlling inmate violence. Rather, his assertions are based solely upon his opinion and speculation. During his deposition, the following exchange occurred:

> Q. You made a statement that the defendants failed to train correctional officers and shift leaders on how to create a safe environment and diffuse a conflict in the pod. I'm going to ask you again, are you familiar with the training that the correctional officers receive?
>
> A. At the time that – at the time that these officers were being training, and I think they send them down to the State Police barracks, they go through a simple training aspect and, boom, they are back up to jail.
>
> Q. Who told you that?
>
> A. I read.
>
> Q. Are you aware that they have a Basic Correctional Officers Academy in Glenville that they attend for six weeks?
>
> A. Six weeks is not enough, sir.
>
> Q. That's your opinion. But are aware that they go to an academy?
>
> A. Yes, sir.
>
> Q. Are you aware that they also receive annual training, in-house training on these subjects?
>
> A. Undoubtedly they didn't.
>
> Q. But do you have any evidence, not your thoughts, but do you have any actual evidence that these officers did not receive the training that they normally receive, that they're supposed to receive?
>
> A. Yes, sir.

> Q. What evidence do you have of that, Mr. Lacy?

(ECF No. 76 at 16–18 [Lacy Dep. pp. 37–39].) Lacy responded "when I came in they didn't screen me." (Id. at 18 [Lacy Dep. p. 39].) He further suggested that the correctional officers should not have access to an inmate's jail files. (*Id*.) When further pressed about what evidence he had of improper training, Lacy stated "it's there" and that the defendants would "have to show the jury where these guys have that type of training." (*Id*. at 19 [Lacy Dep. p. 40].) Thus, Lacy makes only conclusory allegations and incorrectly attempts to shift the burden of proof of the essential elements of his claim onto the defendants.

Lacy has failed to produce any specific evidence to establish that correctional officers at the SCRJ were inadequately trained with respect to controlling inmate violence, or that Defendants DeLong and Crook's deliberate indifference to inadequate training led to Lacy's assaults. Accordingly, the Court finds that Lacy has not demonstrated that DeLong and Crook violated any clearly-established law of which a reasonable official would have known, and therefore, these Defendants are entitled to qualified immunity and judgment as a matter of law on Lacy's supervisory liability claims.

Additionally, despite having ample opportunity to discover the same, Lacy has failed to properly identify the "unknown correctional staff" named in his Complaint and he has failed to develop any evidence that these individuals observed his assaults and failed to intervene. Accordingly, the Court finds that Lacy has failed to establish plausible Fourteenth Amendment claims for relief against these unidentified correctional officers. Therefore, the claims against the "unknown correctional staff" should also be dismissed.

### IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** the Motion for Summary Judgment filed by Defendants DeLong and Crook, (ECF No. 76), **DISMISSES** the claims against the unknown correctional staff, and **DISMISSES** this matter from the docket of the court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 13, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE